Good morning. My name is Henry Lawrence. I represent the defendant in this matter, Antero Resources Corporation, the appellant. This appeal arises out of a determination by the district court that Antero Resources was not the bona fide purchaser of minerals in the Marcellus Shale. This case arises from drilling activities that Antero commenced in West Virginia some 10 years ago. Purchasing, instead of leasing or acquiring the entire minerals, they focused on a particular scene, the Marcellus Sea, a particular formation. In this case, we assert that the district court committed error in two respects. First, with respect to the bona fide purchaser issue. Second, with respect to subject matter jurisdiction under the declaratory judgment. First, under the bona fide purchaser analysis, Mountaineer Minerals asserted that even though it did not have a recorded assignment of a lease, its interest was prior to Antero. Because under the West Virginia reporting statute, 40-1-9, the prior recording of a conveyance to Antero took precedent. The only way for Mountaineer to prevail was to assert that Antero was not a bona fide purchaser of the minerals in the Marcellus. In the district court, the argument that was made was that Mountaineer conceded, but initially argued that there was actual notice, that Antero was actually aware of the prior conveyance. District court rejected that. District court looked and said there was inquiry notice based upon certain factors that existed, but did not go beyond that and determine whether or not Antero used due diligence to explore those rights. We submit that was error clear under the Four Circuits trans-energy case and under West Virginia's Eagle Gas case. Moreover, the finding upsets 150 years of established law in West Virginia that the party that does not record its instrument loses. Absent some showing by that party that failed to record that there was not valuable consideration paid for the interest that was acquired, and that there was notice of the prior existence of that. Neither one of those, we submit neither one of those elements has been established by Mountaineer who has the burden of proof in this issue. Mr. Lawrence, can I stop you there? I want to make sure I understand that question. I thought, aside from the subject matter jurisdiction, the only issue that was before us was the bonafide purchaser issue. I couldn't tell if you were raising an additional issue there about the – aside from those two issues, the subject matter jurisdiction and the bonafide purchaser issue. No, Your Honor. Those are the two issues I raised. The due diligence issue that I spoke to, that may have been what the court focused on. I got confused. I appreciate you clarifying. That due diligence issue is part of the bonafide purchaser. Right. And that is not an issue that was addressed by the court below. The court below said that there was inquiry notice, but never addressed the due diligence component. And that is a critical component that the court failed to address, and that Mountaineer did not establish or present evidence on that issue for purposes of summary judgment. The court conceded that Antero did not have actual notice of the prior assignment. The court said that Antero had inquiry notice and noted that there was a requirement for due diligence, but did not address whether or not Antero conducted that requisite due diligence. And the evidence that was before the court indicated that Antero did. Antero reviewed and copied Perkins' file. The court recalled Perkins was the predecessor to Mountaineer. Mountaineer essentially acquired a contingent claim. That's the second issue as to subject matter jurisdiction. But clearly, Perkins did not have the unreported assignment in its file and did not provide that to Antero. Second point with respect to due diligence, Antero searched the title, looked at the title records to determine if there had been a prior conveyance. There was no prior conveyance. The title came into crude and had not been conveyed to Perkins. Is it your client's position that because it checked the title and saw that there was no assignment of record, that the knowledge it had that the district court outlined of Perkins asserting its ownership interest in the Marcellus rights? Does it matter? The district court laid out five or six instances of your clients being aware of Perkins asserting that it had the rights to the Marcellus part of the interest, correct? Correct. And is it your position that that's not notice on your client's part? It does not arise to the level of inquiry notice based upon the actions that Antero took to determine if that claim was correct. The court looks at West Virginia's decision in the Eagle Gas versus Doran case. That is a perfect example of a similarity to this. In that case, Doran was attempting to lease additional gas formations that there was contention by Eagle that they were already leased. Doran searched the records to determine if there were prior leases, found no lease, asked Eagle for those records. Eagle said, we have a prior lease, could produce no records. Doran then went and took a lease from the mineral owner, and that was one lease. The court said that even though there was a claim by the prior party, by Eagle, that they had these minerals under lease, Doran had exhausted its due diligence, had determined that there was no lease, and the lease that it took from the mineral owner was valid. There was a second lease that the court addressed in that Eagle Gas case. In that instance, same factual scenario, except when Doran went to obtain a lease from the mineral owner, the mineral owner said, well, I have a lease. Here it is. It has not been recorded. In that circumstance, the court said that was actual notice that there was a lease, and that lease prevailed. The scenario we have here is not of the second lease. It's of the first lease, where Antero asked the questions, searched the title, asked Perkins if they had the document, and beyond that, asked Crude, as part of the transaction, had they actually conveyed the mineral interest prior to that. Crude indicated that it had not been a prior conveyance. That statement was wrong, but Antero did not know it was wrong. The document wasn't recorded. The document was not provided to Antero by Perkins. So Antero exercised its due diligence, and the notice, the knowledge that Antero had, did not arise to the level of the inquiry notice that the judge determined. Not only was the conclusion by Judge Stamp incorrect, that Antero was not a bona fide purchaser and had an inquiry notice, the judge never addressed the steps that Antero took to determine if, in fact, there was a prior sign. One of the confusing factors is that the mineral estates were split. Perkins did have the shallow sands, but those shallow sands ended before the Marcellus. So there's discussion in the record that Antero was aware there were wells that were on the property, and that Perkins claimed to have an interest in the oil and gas under the Collins lease. Well, Perkins did have an interest in the shallow gas and had shallow wells. Perkins did not have an interest that was of record in the correct county with respect to the Marcellus interest. The judge did not address that. The judge said, well, these facts give rise to inquiry notice, never acknowledged or addressed the due diligence that had been conducted by Antero to determine that there was not a document of record in Ritchie County acknowledging the assignment of the Marcellus sands to Perkins. And under the clear provisions of the statute, the recording acts, the party that does not record the document is the party that is at risk. And because of that, the court should have determined that under West Virginia Law 40-1-9, the recording statute, because Antero... Well, the district court says that your client was not permitted to simply rely on Crude's record title without inquiring into Perkins' competing claim. Are you saying that you did more than simply rely on Crude's record title? Clearly, Your Honor. There was a title search that was performed. That's what the judge is referring to with respect to the record title. But at the closing, Antero asked Crude's principal, have you conveyed this property previously to anyone else? And the response was no. In addition to that, Antero asked Perkins, do you have, other than the shallow sands, do you have... When was that, also at the closing? Which closing? I don't know. When did you ask Perkins? The record is unclear as to whether that, the exact date when that occurred. It appears that that occurred... And then you asked Crude at the closing. Correct. That is correct. But you had a report showing that Perkins had shallow interest in that, right? That's correct. And that explained, unlike TransEnergy, Your Honor will remember that case, unlike TransEnergy, that was almost 4,000 acres. And in that case, the district court, again, Judge Stamp said no, TransEnergy is a bonafide purchaser, even though there were shallow wells that EQT operated on that almost 4,000-acre track, Judge said that that was not inquiry notice because they could not, TransEnergy could not be charged with knowing all of the wells that were on the property. In this situation, a smaller lease, almost a 600-acre lease, but Antero was aware of wells that were on the property, determined that those wells were shallow wells, and that Perkins had the shallow mineral interest, but did not have a Marcellus mineral interest. Yeah, but the point is, even here, see, even if you looked, and you said you did, but even if you looked, you would still find nothing that shows that they had deep, deep interest in those, in the Marcellus. That would lead them to Marcellus Shell, right? Perkins? That's correct, in the record title. But the operators maintain a lease file in which they have their title. Presumably, when Perkins acquired the rights that it acquired from Crude, through Crude's title, it would have done a title search and determined whether or not the documents for the Marcellus that it contends it was acquiring did, in fact, exist in record title. The purpose of the statute is to allocate the risk. It's in a chapter of the West Virginia Code, Chapter 40, acts that are void as to creditors and purchasers, and it's to protect an innocent purchaser who relies upon record title, who buys property, and then later there's an unrecorded document. The law says that if that document is not recorded, the risk of loss is on the party that fails to record the document, and that's the circumstance that we're presented with here. What the cases say, and this is the Eagle Gas and even the TransEnergy, where there are circumstances that give rise to some belief that there may be an unrecorded document, you have to conduct your due diligence to establish whether or not those unrecorded documents may exist, and that's exactly what Antero did, and that's exactly what the court in Eagle Gas said would be sufficient to determine that there was not inquiry notice. So you don't dispute, it doesn't sound like, that there may have been information that Antero had that Perkins felt like it had the rights, but your position is that upon having that knowledge, it took the proper steps in terms of searching the title, obtaining the title report, and asking the alleged transferor of those rights originally accrued in order to show its due diligence. My time has expired, may I respond? Yes, you may. That's clear, Your Honor. Those steps were taken to satisfy any implication that there was a prior unrecorded document. But your client did have notice that Perkins felt it owned the deepwater rights, correct? Yes, Perkins had negotiated, Antero had offered to buy 15 leases from Perkins, twice before had provided written documents, and that was to acquire the Marcellus Shale. But that, simply because someone contends they own it, I mean that's the Eagle Gas case, because in that, Eagle Gas claimed they owned it, but the court said no, it was not of record, you didn't provide that information, and the one step beyond that here is, Antero went to the seller of the mineral and crude, said no, we have not conveyed that previously. Judge Stamp ignored all of that evidence and simply said because Perkins had claimed to have ownership, that was enough to put you on inquiry notice and you're not a bona fide purchaser, and that is not the law in West Virginia. Thank you, Your Honor. Thank you. Mr. Miller. May it please the court. Your Honors, my name is Alex Miller, I'm here with my father, Kenneth Miller, and we represent Mountaineer Minerals, LLC. I do want to refute a few of the facts that Mr. Lawrence submitted to the court, or contended. Number one, this is not a case of record notice. It is in kind of an indirect way, but Judge Stamp really hit the nail on the head by finding that Antero is not a bona fide purchaser here for two reasons, either of which would defeat their claim to the protection that's granted under the cases and statute cited by Mr. Lawrence. Number one, there was inquiry notice. We submit that if this case doesn't present inquiry notice, it just doesn't exist, Judge Stamp... And opposing counsel seems to concede that, that there was inquiry notice, but then they say we did what was required of us. Well, if opposing counsel, Your Honor, concedes inquiry... I mean, that's what I heard. I don't know for sure. He can correct me when he gets back up here, but I think he said, yeah, we were on some notice and we did our due diligence. We did all that was required. Well, if they were on inquiry notice, then in our mind that ends the analysis because... And I think, Your Honor, you were on to something. The fact that you asked somebody along the way, oh, can you provide all the documents that you have in your file to me without alerting them that there might be a problem, that's a little bit different than at the closing if you say, look, we're here to close this transaction. We've negotiated this sale directly for years, but there's this little issue here. Our title opinion now shows that there's a missing link halfway through the leasehold chain of title. That's a different scenario than saying, oh, we conducted our due diligence because... It's almost like a willful blindness. Exactly, a feigning ignorance, willful blindness. That's exactly this case to a T, Your Honor. Is it willful blindness to check the records and account it? Is it look for what you said you own? That's willful blindness? Well, I agree, Your Honor, that a record title is important, but that's not the end of the analysis. It's not the end, but it's certainly not willful blindness. That's looking where I think I would look first. And also, is it willful blindness to check with the person, crew, who says and said, did you ever convey this? Is that willful blindness? Well, Your Honor, we submit that they had a duty to inquire with Perkins, which was the company they were directly negotiating with for years at that point, at least just ask one question, make one inquiry that... What would be the one question? What's the one question? The one question would be our title opinion shows that there's a gap in the title. We're negotiating with you, Perkins, to buy it from you, but we see this little problem here. Can you explain that to us? And Perkins was able to acquire the assignment at that point and then record it. So this isn't a case where... So you answered the one question. Sure. So how's that willful blindness? Well, maybe willful blindness... When was the one question answered? The one question was never asked, Your Honor. Right. He just answered it, but it was never asked. After you ordered the transaction. But do you agree that notice of Perkins' interest is not enough to determine bona fide purchaser status, that you also have to show an absence of due diligence? I do not agree, Your Honor. So you think the notice that is outlined by the district court, that Antero is aware of Perkins' belief that it owned the deep rights, ends the inquiry, that there's no due diligence requirement? I believe that there is a due diligence requirement at that point. In other words, I think Judge Stamp got it bullseye accurate here. If you're negotiating for a couple of years and it comes up that there's a problem, then at that point you have the duty to inquire. That's what inquiry notice is. Of the person you're negotiating with. Of the person you're negotiating with. Which they did not do. They did not do. Mr. Lawrence makes it seem like they did by saying, yeah, Antero asked if Perkins could turn over the documents in its possession, but that was months before. That was just at the beginning of the negotiations. That's customary. You know, these oil and gas companies negotiate amongst themselves. And at that point, yeah, turn us, give us all the records you have in your file. But there was no mention that there could be a problem. Why didn't you give them the documents? Well, they didn't have it in their possession. They didn't have hardly anything in their possession. Where were they? I'm sorry, Your Honor. Where were they? It was recorded in the neighboring county. And I would just like to. Didn't they know that? They did not know that at the time. They did not realize there was a problem because it does involve a lease. So if you had asked the question, you would have had an answer. Well, we would have been able to discover it, and that's what happened later after Antero purchased it from a different third party, kind of a back alley deal, we submit. And at that point, they certainly. Is that the second part of your argument as to why they're not a bona fide purchaser because of this? Yes, Your Honor. Other dealing? The fact that they were not good faith purchasers, if you read Judge Stamp's opinion, he makes two points and gives two reasons why Antero is not afforded bona fide purchaser protection here. One is inquiry notice, and two is that they didn't purchase in good faith. Yes, Your Honor. Let me make sure. What documents establish that you have deep rights below what's stated in them? The missing assignment, Your Honor. And it was from 1985, about five or ten documents back. That document shows you had deep rights? Yes, Your Honor. And it's a little bit more complicated than that. Mr. Lawrence contends that it's black and white, shallow and deep, but the truth of the matter is Marcellus is actually a shallow formation, and Antero's second title opinion showed that Perkins owned down to the fifth sand formation, but that's only 3,000 feet down. Perkins' wells, in Antero's own title opinion, were down to 6,000 feet, which is the Marcellus right above it. Right above it, you said? Right above it, Your Honor. That means that you don't own below it. That's correct, Your Honor, but that's only one factor. If you read Judge Stamp's reasoning, the timeline speaks for itself. There's numerous facts, conversations, a relationship there between the parties that clearly establishes inquiry notice. And, again, I just want to make it clear, this was a multi-year negotiation, so when Mr. Lawrence contends that Antero asked for the documents, that wasn't near the time of closing. That was at the very beginning of the process. Will you turn us in? Isn't that the best time to ask for a document at the beginning of the process? But that's before they realized that there was a problem. That's before they did a title search and then came up with this cloud or defect on title. At that point, a year or two later, is when Antero found out that there could be an issue with the ownership of Perkins. That's when the inquiry notice kicks in. That's when the duty to inquire, to just ask one question that, rather than to ask one question that, hey, there's a potential problem here, do you have an answer for it? But Perkins never got that opportunity because Antero then purchased it off crude oil without ever alerting Perkins. Your Honor, I would submit that it would be if we were negotiating a sale and purchase of a house a couple years into the process. I find out that there might be a problem, but I don't come to you and ask you, can you explain this? I go to buy it off somebody else. Later on in the negotiation, I come to you and say, not only do you not own it, but I own it. I mean, that's what we're dealing with here. That's exactly the facts. There was never an opportunity to cure it because there was never an inquiry made, which is clearly required under the law in West Virginia, under Trans Energy, under the Eagle case. You're saying in your chain of title from crude, your meaning, Perkins, that there's clear evidence that you own rights below 599,000 feet. Yes, Your Honor. Okay. There is now. And that was recorded until after the transaction. That's correct, Your Honor. It got recorded in the wrong county. Exactly, Your Honor. And if I could just touch on that, the assignment that was misrecorded involved leases in Doddridge and Ritchie counties of West Virginia. It was an oversight in that it was only recorded in one of the two counties and should have been in Ritchie County. We admit that, certainly. But at the same time, it wasn't a gross situation where Perkins, the company that we're talking about, just didn't record it at all. Or didn't record it in several counties, and it should have been in several. But a lot of these leases were on the border. It was recorded in one county. Unfortunately, it did not get recorded in the second county. But we submit that under the West Virginia law, it is clear that Antero had the duty and the obligation to ask the question and inquire, do some due diligence. Judge Stamp was right, Your Honor. They didn't do any due diligence once the issue arose. It was, okay, I'm negotiating to purchase from Perkins. Hey, Perkins, will you send us a box of information, whatever you have. There wasn't any questions asked at that time because nobody knew that there was an assignment that was not of record at that point. Later on, a year down the road, all of a sudden there's an issue that comes up. And even though Antero and Perkins are in direct negotiations, they go behind their back to somebody else. Exactly, Your Honor. And that's the case right on the money. That's when the due diligence requirement. They go behind your back. Why are they obligated to, in terms of privity, that's behind their back? You mean tell me that I'm negotiating with you to buy something? And you haven't given me documents, and I go to someone who tells me, I never give them anything. I can't negotiate with them? I can't buy? How's that going behind your back? Well, Your Honor, I think— Privity is established that legally it should be determined, called behind your back. Well, I'm glad you asked that, Your Honor, because the case law is clear that inquiry notice is created by any situation that alerts an individual to a competing claim. In the joint appendix, there's a deposition of Antero's own representative, Kevin Ellis, and he admits that he was aware of the competing claim of Perkins, and that's the end of the analysis. I mean, that is a smoking gun admission that I was aware of a competing claim to the same Marcellus rights, and rather than inquire, I did nothing. I negotiated a back alley deal with another company. Does the law require the inquiry to go to the party that you're negotiating with, or just the obligation to inquire using whatever it believes is appropriate efforts to determine the facts? Well, Your Honor, that's a good point. In inquiry notices, it requires that the inquiry be made, obviously, of the party that is claiming the ownership. Is there a case that says that? Well, Your Honor, I can't think of a case off the top of my head. The TransEnergy case obviously lays out a lot of these facts, and I know Judge Gregory was on it. There should at least be some good faith negotiation, right? Exactly, Your Honor, and that's another reason that Judge Stamp found that Antero is not afforded the bona fide purchaser protection that comes with the recording statute. Rather, in the present situation, Antero is not afforded that protection, one, because of inquiry notice, but two, because it was not a good faith purchaser. And if you read his opinion, it's thorough, it's well-researched, it hits right on all the seminal West Virginia cases in the subject area, and he lived and breathed the case. I'll be mixing apples and oranges. I don't have an obligation to negotiate with you in terms of, what do you mean by good faith? I could say, well, you know what, I'm negotiating with you, but I asked for documents two years ago. You haven't given them to me. I looked in both places where I found it, and then I found somebody else who tells me that categorically, I never, I never. You mean to tell me I've got to, the whole world has to wait. I can't buy from that person. I have to wait to come back to you and say, can you please help me here? Somebody says, you don't own anything. And then you say, oh, yes, I do, and I have to wait still for you to do that? Your Honor, one question. That's all it would be. Is Antero, when it received information that there could be a problem, just like in your example, the law in West Virginia is clear that you are under the obligation. But I would agree with you if Crude had said, well, you know, I don't think they ever recorded it. We did assign it, but they never recorded it. That's behind your back. But they said categorically, we never assigned anything to them. So you're saying they can't buy anything from them. They're beholden to you ad infinitum for you to figure this thing out, give them documents. It seems to me the lawyers with them ought to say, I'm buying a house from you. I make English covenants that I own the title. You mean somebody ought to have said, listen, let's look at the title and say, oh, my goodness, it's not recorded in the proper county. But you put everything on Antero. Oh, you're the one ought to know what you own. Well, Your Honor, that's a good point. However, that's not the law in the area. Well, maybe not. That's your view. We'll find out when the opinion comes out what we think the law is. Sure, Your Honor. Right. But I know that's why you wanted to come out that way. But we don't know that yet. That's why we're here now. But I'm just talking about the common sense of it. You're putting all this on Antero. You're the one who purports to own what you say you're trying to sell. Right? Do you agree with that? I do agree. Thank you, Your Honor. That's the one question. The one question ought to be in good faith. It's understood you ought to be selling what you own properly. I'm not a real estate lawyer, but I do know title in law school property is 101. Right? It follows the title. Sure. Recording in the place? I mean, where do you put it in the wrong county? It's on the line. It's so close to the line that people think over there, oh, I thought this was in this county. Is that the situation? No, Your Honor. We're not relying on record title here. But that's what inquiry notice is. Otherwise, if it's 100% of the time, that record title always carries the date. It looks like the court was more concerned with the conversation here, like behind your back, double dealing, as opposed to what the inquiry was. They did make an inquiry. That's why. And it found there was no actual notice. Right? You don't disagree with that, right? That stamp found that there was no actual notice. Do you disagree with that? I do disagree with that. I don't see that. So your colleague was incorrectly representing to the court that there was no finding of actual notice. That's true. I don't see that in the opinion anywhere. Judge Stamp was unilaterally. Point to the record where they did find actual notice? I don't. It was not addressed in his opinion or his order. That's the whole point, right? Yeah. In fact, inquiry notice. Judge Stamp did find inquiry notice. Otherwise, it was enough that you should have looked. Sure. And then don't you have to examine how thorough and reasonable the look was? Yes. It had nothing to do with whether you eventually bought something from Crude or not. That's a different question. Yeah. Well, Your Honor, nowhere in the West Virginia law that I'm aware that it gives a step-by-step as to what due diligence has to be. Who's Mr. Ellis? That is Antero's representative. So that's opposing party's representative. Well, he said in this e-mail that he found out that this was owned by Perkins. In this e-mail that was sent four months before an appellant actually acquired the property from somebody else. So he knew that four months. Their attorney knew that four months before. Exactly, Your Honor. That seems like actual notice. Exactly. And that's our second example of a smoking gun in this case is that there was an e-mail from Perkins to Antero on August 13th of 2013. Which the district court highlights in his opinion as well. Judge Stamp does. And it clearly says, look, we have caught wind that Antero is sending pooling amendments out on our lease, and pooling amendments are for the Why are you doing that? And Mr. Ellis responds a day later, I'm sorry. We realize that that's owned by you, Perkins, and the Marcellus rights. And it won't happen again. That's four months, Your Honor, before Antero got another assignment from crude oil, and under the law, we submit again that that is a smoking gun admission of notice of a competing claim is really what the law the test is. I mean, there's a lot of record, a lot of evidence in the record of notice of a competing claim. The district court outlines that. That's in there. The question, I think, is once you have that notice, if you then go check and see a clean title, do you have to come back to you as the seller who hasn't done something that would have protected you? Or are they entitled, once they figure out that you don't own it, to negotiate with someone else? Your Honor, I think the cases are clear that record title is completely different than inquiry notice. In other words, the due diligence component is triggered by inquiry notice, but you can't just run back in and then run the title again and say, oh, well, there's a missing assignment in the middle, Your Honor. So, again, we point you to Judge Stamp's transcript of his hearing and also his order, Your Honors. It was well researched. It was thorough. Again, he followed ironclad West Virginia law on the subject. I mean, it's as well written of opinion as I've ever seen. It's 22 pages long. It wasn't done quickly, and we respectfully submit that you affirm Judge Stamp for those reasons. I do see my time is up, Your Honors, and thank you for having me. Thank you, Mr. Miller. That's your argument, as long as you have time. Thank you, Your Honors. With respect to a couple of questions, if I may follow up. The email that Judge Thacker referenced from Kevin Ellis, Mr. Ellis went on in his deposition to explain that he acknowledged that there was shallow ownership. It doesn't say that Perkins owns the Marcellus. He acknowledges that there's shallow, and he explained that in his deposition. He said our ownership report reflected that Perkins did, in fact, own something. They own shallow. The time he said that, he didn't have the subsequent report. At the time he wrote that email, he thought they had deep water rights, or he certainly thought they thought they had deep water rights, but not deep water, deep rights, correct? No, Your Honor. He said that he, at the time, all he had seen were the records with respect to the shallow well. That was all that was provided in the due diligence. And counsel has addressed an earlier question that Judge Thacker asked about the timing on when the inquiry was made and when the documents were provided. He's indicated that was at the initial, at the start of the negotiations. And with respect to the documents that were provided then, clearly the leases, the assignments, the well records, reflecting that Perkins had an interest in the shallow gas did, in fact, exist. Mr. Ellis does not say in his email, we agree that you own the Marcellus. And Judge Stamp, we submit misconstrued that email and determined that that was an acknowledgment by Mr. Ellis that he recognized that Perkins owned the Marcellus. And Mr. Ellis said, no, we got an ownership report. I thought it was an acknowledgment that Antero believed, that Perkins believed it owned those rights. So it was on notice of competing interest. I would agree. You agree with that? I'm not sure it's the email that did that. Antero had made two offers to buy 15 leases that were for Marcellus. And Perkins was indicating at that time, 2011, 2012, that it owned the Marcellus. But all along they were saying they owned it, right? Correct. They didn't need an email for that. I mean, they said it all along. But here's my question here, Mr. Lawrence, that assuming that the crew transfer assignment that occurred in 85 was properly recorded in the right county, do you agree or disagree that if you had that knowledge, anybody, lawyers in real estate, whatever, would clearly show that Perkins had deep rights, deep rights below $5,999 below? Is that clear? It's not, Your Honor, and that's what we addressed. I didn't think so either. I'm looking at it. That's what we addressed in the footnote. We said that we raised this issue below. Judge Stamp did not address it. He brushed past that. But the issue in the assignments, you see the assignments are of wells, a well and the accompanying lease rights. And that's a shallow well. And you get the borehole that accompanies that. You don't get the entire lease. That's what I was looking for, too, because mountaineer rights can't be broader than what Perkins is, even if you weren't a bona fide purchaser. Clearly. Right. That issue was raised below. But the judge assumed. I just wanted to clear it up because counsel suggested, oh, it's clear in the record that they own deep. I'll go over it, but anyway. So you disagree with that assertion? We clearly do. And we addressed that in the footnote in the briefing that we submitted. I'll go back and make sure. And the language in the conveyance, in the assignment, refers to a well and the rights and the lease accompanying that, which is typically a borehole. And it ends at the end of the well bore, which never extended. There were no wells that were drilled into the Marcellus Formation. One of the other points that the cases make, and this was in TransEnergy, the futility of a second inquiry. That's essentially what opposing counsel is arguing. We asked you for the records once before. You gave us what you had. You should have asked us again, somehow implying that more records would have been given. But the court recognized in TransEnergy that there was no reason for TransEnergy to ask PREMA for records that it did not have. And at their depositions, both Mr. Lancaster and Mr. Perkins said, we didn't have the records. Had they asked us again, we still didn't have them. The law doesn't require you to ask a futile question. You asked before and they gave you everything. Why are you required to ask again? Yeah, go ahead. Correct. That was TransEnergy. I see my time has expired. You can go ahead and finish your thought, but you have to wrap it up at this point. That was TransEnergy. The court said it's futile to ask for something that they've already told you they don't have, so you don't need to ask again. In closing, Your Honor, we would ask the court to reverse and remand this case back to Judge Stamp for entry of judgment in favor of Nterrah. Thank you. Thank you, counsel. We're going to ask the clerk to adjourn the court until tomorrow morning, and then we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.